UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RAFAEL LOPEZ,

Plaintiff,

v. Case No. 3:25cv2408-MCR-HTC

CITY OF PENSACOLA, et al.,

Defendants.
_____________________________/

REPORT AND RECOMMENDATION

Plaintiff Rafael Lopez, proceeding *pro se*, filed a second amended complaint under 42 U.S.C. § 1983, alleging the Defendants violated his First and Fourteenth Amendment rights when he attempted to serve a legal document at Defendant Escambia County School Board's ("ECSB") administrative building. Doc. 10. Upon consideration of the Defendants' motions to dismiss (Docs. 27 & 35), Lopez's responses in opposition (Docs. 29, 30, & 37), and the relevant law, the undersigned recommends the motions be GRANTED, and the claims against Defendants be DISMISSED.

## I. BACKGROUND

In the second amended complaint, Lopez sues four (4) Defendants: (1) the City of Pensacola (the "City"); (2) Pensacola Police Department ("PPD") Detective

Hendrick Martinez in his individual and official capacity[1]; (3) the ECSB; and (4) Gary Marsh,[2] the ECSB's Chief Investigator, in his individual capacity. The undersigned takes the following factual summary from Lopez's second amended complaint as true for purposes of this report and recommendation.

On October 15, 2025, Lopez entered ECSB's administrative building to serve a writ of mandamus. The receptionist refused service. Lopez returned to his vehicle to retrieve documents and when he re-entered the building, he began recording "for evidentiary purposes." ECSB staff and a uniformed security guard ordered Lopez to leave. The guard threatened to have him removed from the premises. Lopez asserted his "lawful right to serve a court-issued writ," explained the law, and the guard ceased further confrontation. Because ECSB refused service, Lopez called 911 for assistance and he "had just retrieved his minor son from the courthouse, teaching him lawful civic procedure."

---

[1] Lopez's official capacity claims against Martinez are duplicative of the claims against the City. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

[2] Lopez has failed to timely serve Defendant Gary Marsh. The Court granted Lopez's motion for an extension of time to complete service and Lopez had until March 20, 2026, to do so. *See* Doc. 42. Thus, the claims against Marsh should be dismissed without prejudice for failure to comply with Federal Rule of Civil Procedure 4(m) and because he fails to state a claim against Marsh for the reasons set forth herein. *See* Fed. R. Civ. P. 4(m); *see also Bilal v. Benoit*, 2025 WL 3240264, at *8 (11th Cir. 2025) (explaining a dismissal against an unserved defendant should be without prejudice); *Smith v. Miami-Dade*, 2026 WL 247042, at *3 (S.D. Fla. Jan. 30, 2026) (dismissing claims against unserved defendants without prejudice).

After Lopez left the ECSB building, ECSB staff communicated with PPD officers privately and off-camera, and these statements were undocumented and misrepresented Lopez's "lawful conduct." ECSB also disclosed nonpublic information about Lopez's minor son, including his full name, age, and school. Martinez conducted an "off-camera investigation," did not interview Lopez or review his recording, and instead relied exclusively on ECSB's "undocumented statements." Martinez also accessed "nonpublic child information without a lawful basis," and "escalated" the matter into an intelligence bulletin, "INT-25-024." INT-25-024 labeled Lopez a "First Amendment Auditor," falsely portrayed Lopez as a threat, and included private information about Lopez's minor child. PPD internally disseminated the intelligence bulletin, entered it into the PPD's "RMS system," and it potentially entered other intelligence databases.

At some point, UWF Police refused to help Lopez "with lawful service" and, after UWF contacted the Escambia County Sheriff's Office ("ECSO"), the ESCO also refused to respond to Lopez's 911 call.

On November 27, 2025, Lopez attempted to personally serve Martinez with this lawsuit. Martinez initially told Lopez he would "never" personally serve him, but subsequently emailed Lopez saying he would accept service.

Lopez contends the intelligence bulletin "is likely" present in the PPD's RMS system and other systems, ECSB continues to retain his personal data, and because

his minor son is still enrolled in school in the county, there is risk of further disclosure.

Based on the foregoing, Lopez alleges the following claims: (1) First Amendment Retaliation against Martinez and the City, (2) Interference with Court Access against Martinez and the City; (3) Fourteenth Amendment Stigma-Plus against Martinez and the City; (4) "Informational Privacy (Minor Child)" violations against Martinez, ECSB, and Marsh; (5) Fourteenth Amendment substantive due process violations against ECSB and Marsh arising out of Lopez's "parental liberty interest"; and (6) two *Monell*[3] claims—one against the City and one against ECSB. As relief, Lopez seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must liberally construe Lopez's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972),

[3] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. DISCUSSION

Defendants Martinez and the City move to dismiss the second amended complaint as a shotgun pleading, for failure to state a claim, and, regarding Martinez, on the basis of qualified immunity. Doc. 27. Defendant ECSB separately moves to dismiss on similar grounds, arguing the second amended complaint is a shotgun pleading and fails to state a claim. Doc. 35. For the reasons set forth below, the undersigned agrees the second amended complaint fails to state a claim against the Defendants.[4]

### A. First Amendment Retaliation Against Martinez

Lopez brings a First Amendment retaliation claim against Martinez for "generating" INT-25-024.[5] Doc. 10 at 5. To state a First Amendment retaliation claim, a plaintiff must show three elements: (1) he "engaged in constitutionally protected speech"; (2) "the defendant's retaliatory conduct adversely affected that

---

[4] The second amended complaint is also a shotgun pleading because, in each claim, Lopez incorporates the preceding claim's factual allegations and does not make clear which facts support which claims. Moreover, he references paragraph numbers but the factual allegations are not numbered. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (defining four types of shotgun pleadings). Also, as discussed herein, the claims are premised entirely on conclusory and vague allegations of wrongdoing without factual support. *Id.*

[5] Lopez's claims against the City are analyzed below in Section III(F).

Page 6 of 19

protected speech"; and (3) "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's [protected] speech." *Huggins v. Sch. Dist. Of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th Cir. 2025).

Lopez asserts he engaged in protected speech activity that included "recording officials, serving a writ, and calling 911." Doc. 10 at 5. Assuming Lopez engaged in protected speech,[6] he has not alleged facts sufficient to show that Martinez engaged in any retaliatory conduct. Instead, Lopez states in conclusory fashion that "Martinez retaliated by generating INT-25-024." Doc. 10 at 5. Such a conclusory allegation is insufficient to state a claim; calling Martinez's conduct retaliatory does not make it so. In other words, the second amended complaint contains "no factual allegations that would allow a reasonable inference that a causal connection existed" between Lopez's protected speech and Martinez's alleged retaliation. *Leonard v. Monroe Cnty. Fla.*, 789 F. App'x 848, 851 (11th Cir. 2019) (affirming dismissal because "Plaintiff made only a conclusory assertion that he was placed in administrative confinement in retaliation for filing grievances"); *see also Jordan v. Oakes*, 2025 WL 618819, at *2 (11th Cir. 2025) (affirming dismissal of First Amendment retaliation claim because the record demonstrated plaintiff's

---

[6] While there is no constitutional right to serve a writ or call 911, the Eleventh Circuit has recognized the First Amendment "protects the right to gather information about what public officials[, including police officers,] do on public property." *See Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (collecting cases).

"allegations were conclusory and speculative"). Instead, the allegations show that the ECSB called Martinez because Lopez would not leave the building and after speaking to ECSB, Martinez authored the internal bulletin. Because Lopez's "unsupported conclusory assertion about a retaliatory motive is not enough to state a plausible claim for relief," the First Amendment retaliation claim against Martinez should be dismissed. *Leonard*, 789 F. App'x at 851 (citing *Iqbal*, 556 U.S. at 678).

**B. Interference with Court Access**

Lopez alleges Martinez and the City interfered with his access to the courts in violation of his First Amendment rights when Martinez "obstructed" his attempt to serve process and when PPD's "false intelligence caused other agencies to refuse assistance." Doc. 10 at 5. The constitutional right to access the courts is grounded in Article IV's Privileges and Immunities Clause, as well as the First, Fifth, and Fourteenth Amendments. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). Access to the courts must be adequate, effective, and meaningful, but to establish a violation of the right, plaintiffs must show they have been prevented from pursuing a nonfrivolous underlying cause of action. *Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 1010).

To state a claim arising from a denial of access to courts, the plaintiff must establish an actual injury by demonstrating his "efforts to pursue a nonfrivolous claim were frustrated or impeded" by the complained of conduct. *Barbour v. Haley*,

471 F.3d 1222, 1225 (11th Cir. 2006). Additionally, the plaintiff must describe the underlying cause of action in specific enough terms to show that the underlying claim is "arguable" and "nonfrivolous." *Christopher*, 536 U.S. at 415-16 (explaining that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation"). Here, Lopez's allegations do not show he has been prevented from pursuing a nonfrivolous underlying cause of action. For example, while Lopez contends he was unable to serve a writ of mandamus on the ECSB, he provides no information about the nature of the underlying cause of action and does not allege that such inability prevented him from pursuing a claim. Moreover, although Lopez sues the City, the second amended complaint alleges no facts showing how the City (versus the PPD) prevented service.

Similarly, Lopez's initial inability to serve Martinez with this suit did not interfere with his access to courts because (1) Lopez admits Martinez agreed to accept service; (2) Martinez has been served and responded; and (3) as the Court previously noted in its December 16 Order, Lopez cannot also act as a process server when he is a party. *See* Doc. 21 at 2; Fed. R. Civ. P. 4(c)(2) ("Any person who is at least 18 years old ***and not a party*** may serve a summons and complaint.") (emphasis added). Lopez fails to state a claim for lack of access to the courts and this claim should be dismissed. *See Chappell v. Rich*, 340 F.3d 1279, 1283-84 (11th Cir. 2003)

(affirming dismissal of access to courts claim and noting plaintiffs did not allege "the Defendants' actions would have made such a suit inadequate, ineffective, or not meaningful").

**C. Fourteenth Amendment "Stigma-Plus"**

Lopez brings a Fourteenth Amendment "Stigma-Plus" claim against Martinez and the City for publishing "false, stigmatizing information" about him, which then altered his "legal status." Doc. 10 at 5. To bring a "stigma-plus" claim under the Fourteenth Amendment, a plaintiff must pass the test from *Paul v. Davis*, 424 U.S. 693 (1976), which requires a showing of defamation by the government *plus* a violation of "some more tangible interest" before a plaintiff may "invoke the procedural protections of the Due Process Clause." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (noting that defamation alone is "not a constitutional deprivation") (internal citations and quotations omitted).

"To establish a cause of action for defamation, a plaintiff must show: '(1) publication; (2) falsity; (3) actor must act … at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.'" *Montgomery v. McNeil*, 2021 WL 3609325, at *3 (N.D. Fla. July 14, 2021) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). The "more tangible interest" part of a Fourteenth Amendment stigma-plus claim generally includes a deprivation of a recognized property or liberty interest, such as

termination of employment or diminution in salary. *See Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1297 (11th Cir. 2003).

Lopez claims Martinez "falsely portrayed [Lopez] as a threat" and labeled him a "First Amendment Auditor" in the intelligence bulletin, even though Lopez has "never identified as such." Doc. 10 at 3. Those allegations, however, are insufficient to establish a claim for defamation. First, despite Lopez claiming that Martinez "falsely portrayed" him as a threat, Lopez admits the ECSB called Martinez, presumably, because they felt he was a threat when he refused to leave. Thus, any reference by Martinez to Lopez being a threat was not false but based on his investigation. Second, while Lopez may be unhappy with being labeled a "First Amendment Auditor," nothing in that statement shows that it was defamatory. Indeed, it is unclear what the term means and it could simply be a reference to Lopez's assertion of his First Amendment rights.

Also, even if either of those statements were defamatory, because the bulletin was disseminated only internally, it was not "published" for purposes of a defamation claim. *See, e.g., Washington v. Miami-Dade Cnty.*, 2019 WL 7049931, at *3 (S.D. Fla. Dec. 23, 2019) ("The publication prong [of defamation] is not met as a matter of law where communications are between governmental employees and agencies."); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 n.6 (2021) (explaining that "plaintiffs' internal publication theory circumvents a fundamental

requirement of an ordinary defamation claim—publication") (citing *Chalkley v. Atlantic Coast Line R. Co.,* 150 Va. 301, 326-328 (1928)) (collecting cases). And Lopez's speculation that the bulletin may have been more widely disseminated is insufficient to overcome a motion to dismiss. To have a defamation claim, the defamatory communication must have been published to a third party. *See Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1301 (M.D. Fla. 2013) (defamation claim does not lie when third party publication only involves internal corporate communications because "the essential element of publication to a third party is lacking").

Regardless, Lopez has not stated how the bulletin caused him actual harm. To the extent Lopez alleges the bulletin harmed his reputation, "[d]amage to reputation alone is insufficient to state a Fourteenth Amendment [stigma-plus] claim." *Rehberg v. Paulk*, 611 F.3d 828, 852 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012); *see also Paul*, 424 U.S. at 701 ("[T]his line of cases does not establish the proposition that reputation alone … is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."). Therefore, Lopez's stigma-plus claim should be dismissed.

Page 12 of 19

### D. Fourteenth Amendment: Informational Privacy of a Minor Child

In Count IV, Lopez accuses Martinez,[7] the ECSB, and Marsh of accessing and disclosing non-public information about his minor child. However, as this Court previously told Lopez, he cannot pursue a claim on behalf of his minor son. *See* Doc. 4; *see also FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015) (affirming district court's dismissal of plaintiff's case, in which she sought to represent her minor daughter, and finding "[t]he right to appear *pro se* … is limited to parties conducting 'their own cases,' and does not extend to non-attorney parties representing the interests of others"). Regardless, as the Defendants point out, Lopez has not identified a legal basis for this claim.

### E. Fourteenth Amendment: Parental Liberty

In Count V, Lopez contends that the ECSB and Marsh violated his "fundamental right to protect his child's privacy." Doc. 10 at 5-6. To the extent this is a different claim than the informational privacy claim analyzed above, Lopez still fails to state a claim. As an initial matter, although Lopez attempts to cast this claim as something other than a claim for a violation of substantive due process, his argument is nonsensical. A claim "grounded in the fundamental parental liberty

[7] Martinez also argues that Lopez's claims against him are barred by qualified immunity. Because the undersigned finds that Lopez has failed to state a cause of action against Martinez, the Court need not address the qualified immunity argument.

interest," (Doc. 37 at 5) is, as the Defendants posit, "a poorly-worded one for a substantive due process violation" (Doc. 35 at 14).

The problem with Lopez's claim is that while the Supreme Court has held that "parents have a constitutionally protected liberty interest in the care, custody, and management of their children," the Supreme Court has not recognized a "fundamental right to protect a child's privacy." *See Maddox v. Stephens*, 727 F.3d 1109, 1119-1120 (11th Cir. 2013) (noting "the Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended'").

Moreover, even if there was such a fundamental right, "plaintiffs face a high bar when attempting to establish a substantive due process violation." *See id.* at 1119. "[C]onduct by a government actor will rise to the level of substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id*. (citing *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). "Even intentional wrongs seldom violate the Due Process Clause," and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* (internal citations and quotations omitted).

Here, the conduct Lopez takes issue with—the alleged disclosure of his son's identifying information to law enforcement—is neither egregious nor arbitrary.

Indeed, it was Lopez who chose to make his son a witness to the events. Inclusion of the son's identifying information in an internal law enforcement bulletin is simply not "conscience shocking." *See Waddell*, 329 F.3d at 1305 ("Acts 'intended to injure in some way unjustifiable by any government interest' are 'most likely to rise to the conscience-shocking level.'") (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 833 (1998)). Thus, Lopez fails to state a claim that Defendants violated his "parental liberty" rights.

### F. *Monell* Claims

Lopez alleges two *Monell* claims in his second amended complaint. The first is against the City. Lopez alleges the City's "customs, practices, and training regarding 'First Amendment Auditors' were the moving force behind the constitutional violations." Doc. 10 at 6 (Count VI). The second is against ECSB for maintaining "a practice of sharing protected student/parent information with law enforcement without statutory basis," resulting in "customs and failures to train [that] were the moving force behind the violations." Doc. 10 at 6 (Count VII). Neither claim passes muster.

"To prove a *Monell* claim, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1300 (11th

Cir. 2025). To establish the second element, Lopez must identify either "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice.'" *Grech v. Clayton Cnty.*, 335 F.3d 1325, 1329 (11th Cir. 2003). "To establish the existence of an unofficial custom or practice, the plaintiff must show that the practice is longstanding, widespread, and 'so settled and permanent that it takes on the force of law.'" *Flink v. City of Fort Walton Beach Police Dep't*, Case No. 3:22-cv-8087/TKW-HTC, 2022 WL 19363792, at *4 (N.D. Fla. Oct. 24, 2022) (quoting *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016)).

As an initial matter, and as discussed above, neither Lopez's First Amendment rights nor his Fourteenth Amendment rights have been violated. Thus, Lopez has failed to allege facts sufficient to establish the first element of a *Monell* claim. *See Teel v. Lozada*, 99 F.4th 1273, 1288 (11th Cir. 2024) (affirming district court's grant of summary judgment and dismissing plaintiff's *Monell* claim "based on the first element of *Monell*"); *see also Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1120 (M.D. Fla. Nov. 14, 2018) ("Indeed, a *Monell* claim is derivative of—and thus requires—an underlying constitutional violation.").

And even if he could show a constitutional violation, Lopez has failed to identify any specific policy, custom, or practice of the City or the ECSB which resulted in a constitutional violation. Simply alleging that such policies, customs, or practices exist is insufficient to state a claim. *See e.g., Gutterman v. City of Lynn*

*Haven*, Case No. 5:25-cv-230/AW/MJF, 2025 WL 3900628, at *1 (N.D. Fla. Jan. 21, 2025) ("If a plaintiff could evade *Monell* with a generic allegation that some municipal defendant 'had a custom of allowing the type of conduct that caused my harm,' little would be left of the pleading standard.").

Lopez's failure to allege any specific facts showing a persistent and widespread practice undermines his *Monell* claim. "This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). Relevant here, "[t]his prevents the imposition of liability based upon an isolated incident," *McDowell*, 392 at 1290. Thus, Counts VI and VII should be dismissed.

**G. Additional Amendments are Unwarranted**

In response to the motions to dismiss, Lopez concedes some of his claims may be deficient but argues the deficiencies are "curable through amendment" and "such a defect is precisely the type contemplated by Rule 15's liberal amendment policy." Doc. 29 at 2; *see also* Doc. 37 at 3. However, in granting leave to amend under Rule 15(a)(2), "it is appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation." *Dussouy v. Gulf Coast*

Page 17 of 19

*Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Ultimately, the "decision whether to grant leave to amend is committed to the sound discretion of the trial court," *Shipner v. E. Air Lines, Inc.*, 86 F.2d 401, 406 (11th Cir. 1989) (internal citations omitted).

Here, the undersigned finds that allowing an additional amendment would not promote judicial efficiency. First, Lopez has already filed two amendments, as well as a "notice (Doc. 30) that improperly attempts to supplement his second amended complaint with additional facts. However, even considering those additional facts, Lopez still cannot state a claim against the Defendants. Second, Lopez sought leave to file a third amended complaint, and as set forth in the Court's order denying that request, the proposed third amended complaint contained no new facts, no new causes of action, and added no new defendants. Doc. 21.

At the end of the day, Lopez is unhappy with the investigation a PPD officer conducted in response to a call from ECSB regarding Lopez's refusal to leave the premises. None of the conduct described by Lopez rises to the level of a constitutional violation. Despite several opportunities to more carefully craft his allegations, the second amended complaint continues to fabricate causes of action that do not exist and rely on vague, conclusory, and speculative allegations of wrongdoing. A fourth opportunity to amend to add additional facts is unlikely to

result in a complaint that is sufficient to be served. Thus, the Court should exercise its discretion to deny any further amendments and dismiss this action.[8]

## IV. CONCLUSION

For the reasons stated above, Lopez fails to state a claim under any theory he advances. Thus, Defendants' motions to dismiss should be granted.

Accordingly, it is RECOMMENDED that:

1. Defendants City of Pensacola and Hendrick Martinez's Motion to Dismiss (Doc. 27) be GRANTED and Lopez's claims as to these defendants be DISMISSED WITH PREJUDICE.

2. Defendant Escambia County School Board's Motion to Dismiss (Doc. 35) be GRANTED and Lopez's claims as to this defendant be DISMISSED WITH PREJUDICE.

3. Lopez's remaining claims against Defendant Marsh be DISMISSED WITHOUT PREJUDICE for Lopez's failure to timely serve Marsh under Federal Rule of Civil Procedure 4(m) and for failure to state a claim.

4. The clerk close the file.

---

[8] Although the second amended complaint purports to set forth nine causes of action, the last two counts, Count VIII and Count IX, are not causes of action, but claims for damages and equitable relief. Because Lopez has failed to state a claim against the Defendants, he is not entitled to damages and regardless, there is no such thing as a standalone claim for damages. Similarly, Lopez is not entitled to a declaratory judgment to adjudicate the legality of past conduct. *See Hitchcock v. USAA Cas. Ins. Co.*, No. 6:18-cv-1986-Orl-28EJK, 2020 WL 364600, at *2 (M.D. Fla. Jan. 22, 2020).

At Pensacola, Florida, this 26th day of March, 2026.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.